**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **DALE BRYAN MCNEILL,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **A-11-CA-495  SS** |
| | § | |
| **THE UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE SAM SPARKS
        UNITED STATES DISTRICT JUDGE

The undersigned magistrate judge submits this Report and Recommendation to the District

Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the

United States District Court for the Western District of Texas, Local Rules for the Assignment of

Duties to United States Magistrate Judges.

Before the Court are Petitioner's Petition for a Writ of Coram Nobis, filed June 13, 2011

(Clerk's Dkt #1); Government's Response to Petitioner's Petition for a Writ of Coram Nobis, filed

September 7, 2011 (Clerk's Dkt #8); and United States' Response to the Petitioner's Closing

Remarks, filed November 22, 2011 (Clerk's Dkt #15)

**I.  PROCEDURAL BACKGROUND**

Petitioner Dale Bryan McNeill ("McNeill") was criminally prosecuted in cause number A-03-

CR-177 in this Court (the "Criminal Case").  He pled guilty pursuant to a plea agreement to a single

count superseding information charging him with misdemeanor possession of a controlled substance

in violation of 21 U.S.C. § 844.  On September 29, 2003, McNeill was sentenced to three (3) years

probation, ninety (90) days in a halfway house and ordered to pay a fine in the amount of $5,000.00.

Petitioner did not appeal his conviction and sentence.  He successfully completed his term of

probation.  McNeill has now filed a petition for a writ of error coram nobis seeking relief from his

conviction.  The government has filed a response and the matters are now ripe for determination.

## II.  FACTUAL ALLEGATIONS AND ISSUES

McNeill is a Canadian citizen who has lived in the United States since 1995.  He became a

permanent resident in 2001.  (Pet. Ex. A ("McNeill Aff.") at 1).  He was arrested and charged in the

Criminal Case in April 2003.  McNeill hired Christopher Gunter ("Gunter") to represent him in the

Criminal Case.  According to McNeill, he advised Gunter that he would not be willing to plead

guilty to a felony as that would result in his deportation.  McNeill states:

> I advised [Mr. Gunter] that I would go to trial rather than jeopardize my permanent
> resident status.  I made it clear that preserving my immigration status was my number
> one priority.  Mr. Gunter specialized in criminal law and was primarily concerned
> with my criminal defense, not my immigration status.  I was under the impression
> that as long as I was not convicted of a felony, my immigration status would remain
> intact.  I do not recall any further conversations with Mr. Gunter about immigration
> law and he did not recommend that I seek additional advice from an immigration
> lawyer.

(McNeill Aff. at 1-2).

According to McNeill, in July 2010, he applied to become a United States citizen.  During

the application process, McNeill was informed by immigration officials that his misdemeanor

conviction in the Criminal Case might bar his application and result in his deportation.  (*Id*. at 2).

McNeill thereafter consulted several immigration attorneys who advised him his criminal conviction

would definitely result in his deportation.  (*Id*.).  He alleges that had he known of the immigration

consequences of his guilty plea, he would have never agreed to the plea agreement and would have gone to trial.  (*Id*. at 2-3).

By way of his petition, McNeill alleges he is entitled to relief from his conviction because his attorney failed to inform him of the immigration consequences of his guilty plea.  He maintains the failure of his counsel constituted ineffective assistance of counsel of a constitutional dimension under *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473 (2010).  McNeill contends his guilty plea, and resulting conviction, were thus rendered invalid and should be vacated..

### III.  ANALYSIS

**A.    Coram Nobis**

 "The writ of coram nobis is an extraordinary remedy available to a petitioner no longer in custody who seeks to vacate a criminal conviction in circumstances where the petitioner can demonstrate civil disabilities as a consequence of the conviction, and that the challenged error is of sufficient magnitude to justify the extraordinary relief." *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004) (quoting *Jimenez v. Trominski*, 91 F.3d 767, 768 (5th Cir. 1996));. *see also United States v. Dyer*, 136 F.3d 417, 422 (5th Cir.1998) (writ of coram nobis "has been used as an avenue of collateral attack when the petitioner has completed his sentence and is no longer 'in custody' for purposes of seeking relief under either 28 U.S.C. § 2241 or § 2255").  The writ can only issue when "no other remedy is available" and when "sound reasons" explain the failure to seek relief earlier. *United States v. Dyer*, 135 F.3d 417, 422 (5th Cir. 1998) (citations and quotations omitted).

The Fifth Circuit has made it clear that a person facing the collateral consequences of possible deportation who is no longer serving his sentence for his federal conviction may use the writ of coram nobis to challenge the conviction.  *Esogbue*, 357 F.3d at 534   The Supreme Court has also

suggested coram nobis review is appropriate in such circumstances.  *See Santos–Sanches v. United States*, __ U.S. __, 130 S. Ct. 2340 (2010) (vacating judgment and remanding to reconsider decision upholding denial of coram nobis relief when claims were based on counsel's alleged affirmative misrepresentations and failure to warn of immigration consequences).  Because it appears that the instant writ is the correct vehicle to raise this claim, the undersigned will turn to the merits of McNeill's claims.

## B.      Retroactivity

As an initial matter, Respondent argues McNeill cannot prevail in this action because the decision in *Padilla* is not retroactively applicable to cases on collateral review.  McNeill argues his counsel's failure to correctly inform him he faced a risk of deportation as a result of his conviction in the Criminal Case constituted ineffective assistance of counsel of a constitutional dimension.  The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case reasonably effective assistance of counsel. U.S. Const. amend VI; *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).  To prevail on an ineffective assistance of counsel claim, movant must satisfy the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, he must demonstrate counsel's performance fell below an objective standard of reasonableness.  *Id*.  Under this standard, counsel must "research relevant facts and law, or make an informed decision that certain avenues will not be fruitful."  *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003).  Second, movant must prove he was prejudiced by counsel's substandard performance.  "[T]o prove prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 841-42.  When a defendant fails to meet either requirement of the *Strickland* test, his ineffective assistance of

counsel claim is defeated.  *Belyeu v. Scott*, 67 F.3d 535, 538 (5th Cir. 1996); *United States v. Gaudet*, 81 F.3d 585, 592 (5th Cir. 1993).

In *Padilla* the Supreme Court held "counsel must inform her client whether his plea carries a risk of deportation."  *Padilla*, 130 S. Ct. at 1486.  *Padilla*, however, was decided some seven years after McNeill was allegedly advised by his attorney that he did not face immigration consequences from his guilty plea.  Neither the Supreme Court nor the Fifth Circuit have addressed the retroactive applicability of the decision in *Padilla*.  Currently, there appears to be no consensus on the issue.  One circuit has concluded the decision is to be applied retroactively.  *See United States v. Orocio*, 645 F.3d 630, 640-42 (3rd Cir. 2011) (concluding *Padilla* was "old rule" and thus applied to cases prior to decision).  Others have rejected that conclusion.  *See United States v. Chang Hong*, __ F.3d __, 2011 WL 3805763, at *9 (10th Cir. Aug. 20, 2011) (although *Padilla* establishes new rule of constitutional law, it does not apply retroactively to cases on collateral review)*; Chaidez v. United States*, 655 F.3d 684, 694 (7th Cir. 2011) (same).  *See also United States v. Hernandez–Monreal*, 404 F. App'x 714, 715 n.1 (4th Cir. 2010) (commenting "nothing in the *Padilla* decision indicates that it is retroactively applicable to cases on collateral review").

Notably, however, the Supreme Court commented in *Padilla* that

> [i]t seems unlikely that our decision today will have a significant effect on those convictions already obtained as the result of plea bargains.  For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea.

*Padilla*, 130 S. Ct. at 1485.  The courts in this circuit which have considered the issue found the comment by the Supreme Court suggests the decision should be applied retroactively.  *Amer v. United States*, 2011 WL 2160553, at *2 (N.D. Miss. May 31, 2011); *Zapata–Banda v. United States*,

2011 WL 1113586, at *6 (S.D. Tex. Mar. 7, 2011); *Marroquin v. United States*, 2011 WL 488985, at *7 (S.D. Tex. Feb. 4, 2011). Perhaps most telling is the comment by another district court: "Since *Padilla* itself was on collateral review and it both announced and applied its own rule, this Court is compelled to reach the merits of [petitioner's] *Padilla* claim." *Santos-Sanchez v. United States*, 2011 WL 3793691, at *10 (S.D. Tex. Aug. 24, 2011). It is difficult to see how the Supreme Court could apply the rule in *Padilla* itself without a belief that the rule applied retroactively. The undersigned will therefore move to the merits of McNeill's argument.

## C.     Counsel's Performance

As set forth above, McNeill has presented affidavit testimony which, if accepted as true, would establish he was not adequately informed of the immigration consequences of his guilty plea by his counsel. Respondent, in turn, has presented affidavit testimony from Chris Gunter, McNeill's counsel, largely rebutting McNeill's testimony. As a result of the factual disputes raised by the affidavits, the undersigned conducted an evidentiary hearing to evaluate the credibility of both McNeill and Gunter. *See United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981) (in post-conviction challenge "contested fact issues ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record"). *See also United States v. Giacomel*, 153 F .3d 257, 258 (5th Cir. 1998) (magistrate judge may make credibility findings based on evidence presented at evidentiary hearing in post-conviction challenge).

McNeill testified he entered the United States in 1995 and was granted permanent legal resident status in 2001. In 2003 he was indicted on felony federal drug charges and hired Gunter to represent him. McNeill testified he told Gunter he was not a citizen of the United States and would not agree to plead guilty to a felony because he would be deported as a result. According to McNeill,

Gunter did not advise him regarding the immigration consequences he faced.  He did not recall whether Gunter referred him to an immigration lawyer.  McNeill was certain he insisted he would not plead guilty to a felony because it would result in his deportation.  However, he was under the impression a misdemeanor conviction would not have the same result.  McNeill agreed to plead guilty to a misdemeanor in the Criminal Case and completed serving his sentence in 2006.  In 2010 McNeill applied to become a citizen of the United States.  During an interview with an immigration official, he was informed for the first time that his misdemeanor conviction rendered him deportable.  McNeill consulted with two immigration attorneys who confirmed the effect of his conviction.  He testified he would not have plead guilty had he been informed of the immigration consequence of his plea.

Gunter also testified at the evidentiary hearing.  He stated he learned in his initial interview with McNeill that McNeill was not a citizen of the United States.  Gunter testified he told McNeill at that initial interview McNeill would have immigration problems if convicted.  Gunter stated he was aware a felony drug charge would result in deportation, but no discussion was had regarding a misdemeanor conviction.  Gunter testified he told McNeill he was not an immigration lawyer, recommended McNeill consult an immigration lawyer, and even provided McNeill with the name of an immigration lawyer.

With regard to the charges, Gunter stated McNeill initially desired to go to trial on the charges, as he was greatly concerned with avoiding jail time.  The case was set for trial in August 2003.  A little more than a week before the trial setting, the government offered a plea agreement in which McNeill would plead guilty to a single felony charge, as opposed to the two felony counts pending in the indictment.  According to Gunter, McNeill rejected the agreement for a variety of

reasons.  Gunter testified that although McNeill expressed a concern about his immigration status, his repeated, and primary concern was avoiding prison time. Thus, Gunter made a counter offer of a guilty plea by McNeill to a misdemeanor charge, which greatly increased the likelihood of a term of probation.  Gunter testified the government originally rejected the counteroffer, but as trial approached, the government changed its position and agreed to the misdemeanor plea.  Gunter stated he advised McNeill of the offer, and in their discussion told McNeill the misdemeanor conviction might still result in McNeill's deportation.[1]  He did not remember telling McNeill that the misdemeanor conviction *would* result in deportation.  Gunter also reurged McNeill to consult an immigration lawyer.  McNeill agreed to accept the plea offer.

McNeill argues that because it was a certainty that he would be deportable even if convicted of a misdemeanor controlled substance offense, Gunter was required under *Padilla* to inform him of the immigration consequences of entering his guilty plea.  According to McNeill, this case falls solidly within the language of *Padilla* that in a case where "the deportation consequence is truly clear" then "the duty to give correct advice is equally clear."  *Padilla*, 130 S. Ct. at 1485.  Here, there does not appear to be a dispute that the "deportation consequence" of McNeill's plea was "truly clear."  In short, even a plea to a misdemeanor charge of possession of a controlled substance meant

---

[1]Gunter's file for the McNeill case still contained a copy of an article from a criminal defense lawyer magazine titled "Immigration Implications for Criminal Convictions," published in the January/February 2003 issue of *Voice for the Defense*.  Clerk's Doc. No. 8-1.  He testified that he consulted this article (which still contains his underlining) in informing McNeill that he could still be subject to deportation if he pled to a misdemeanor drug charge.

that McNeill would be deportable, and there would be no avenue for McNeill to pursue cancellation

of removal or any similar remedy to avoid deportation.[2]

But this is not a case in which a criminal defendant was misled by his attorney about the

consequences of a guilty plea.  Rather, it is clear Gunter took some pains to educate himself

regarding the relevant immigration law, and to advise McNeill to consult with an experienced

immigration lawyer regarding the potential consequences of the Criminal Case.  Further, as noted

in the footnote, Gunter was correct in focusing on the felony/misdemeanor distinction, as the *only*

way McNeill might have been able to avoid deportation, given that he was facing a controlled

---

[2]While this fact can be stated in one sentence, the legal analysis needed to get there is far less simple.  To begin, the substance at issue in this case was Gamma hydroxybutyric acid (GHB), which was added in 2000 to Schedule I of the list of "controlled substances" contained in 21 U.S.C. § 812(c).  *See* Pub. L. 106-172, Secs. 2, 3(a), 114 Stat. 7, 8 (Feb. 18, 2000).  GHB was thus a "controlled substance" in 2003, the date of the offense at issue here.  An alien convicted of an offense involving a controlled substance is considered "inadmissible" into the United States, 8 U.S.C. § 1182(a)(2)(A), and "deportable" from the United States, 8 U.S.C. § 1227(a)(2)(B).  While a permanent resident alien—like McNeill—who is deportable (or "removable," the current term), may seek cancellation of removal in certain circumstances, such an alien is barred from seeking cancellation of removal if the offense making him removable occurred within 5 years of the alien obtaining lawful permanent resident status.  This is because to be eligible for cancellation of removal, an alien must have been a lawful resident for at least 5 years.  8 U.S.C. § 1229B(a)(1).  In calculating this time period, the period of residence is deemed to end when the offense rendering the alien inadmissible or deportable is committed.  8 U.S.C. § 1229B(d)(1)(B).  McNeill became a permanent resident in 2001, and he committed his offense in 2003.  He therefore could not meet the 5 year residence requirement, and thus would not be eligible to pursue cancellation of his removal.  Having said this, there was potential significance to McNeill pleading to a misdemeanor rather than a felony.  Had McNeill been convicted of a *felony* controlled substance offense, that would have been considered an "aggravated" felony under immigration law, 8 U.S.C. § 1101(a)(43)(B), making McNeill automatically deportable, 8 U.S.C. § 1227(a)(2)(A)(iii), and ineligible for cancellation of removal regardless of how long he had been a permanent resident, 8 U.S.C. § 1229B(a)(3).  Put another way, had McNeill been able to meet the 5 year residence requirement, the fact that his conviction was a misdemeanor controlled substance offense (as opposed to a felony) would have meant that he was eligible to seek cancellation of his removal, and thus would have made a difference to his immigration status.  It is for this reason that paying attention to whether the conviction was for a misdemeanor or felony *was* appropriate; it simply was not the only factor in the analysis.

substance offense, was to avoid a felony conviction.  Given the complexity of the immigration law, the extremely professional manner in which Gunter approached the case, and the actual steps Gunter took to ensure McNeill obtained complete advice on the immigration issues, the undersigned simply cannot find that Gunter's representation fell below an objective standard of reasonableness, even though Gunter did not specifically advise McNeill of the actual immigration consequences of a guilty plea to the misdemeanor GHB offense.[3]  In 2003, with the law as it stood at that time, Gunter's actions were as professional or better than those provided by the best lawyers appearing in federal court at that time.  To find Gunter to have acted below the standard of care in these circumstances would be ignoring reality, not to mention unjust.

Regardless, even if one were to conclude that Gunter's representation fell below the standard of care, McNeill has failed to demonstrate that he was prejudiced.  "To prove prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  *Bond v. Dretke*, 384 F.3d 166, 167–68 (5th Cir. 2004).  McNeill testified he would have not pleaded guilty if he had known that his guilty plea would result in his deportation and instead would have gone to trial.

The Court does not find this testimony credible for several reasons.  First, Gunter testified McNeill's main objective was not going to prison, testimony not rebutted by McNeill.  Second,

---

[3]The undersigned notes in 2003 immigration law had recently undergone significant changes as a result of the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.  See Enriquez-Gutierrez v. Holder 612 F.3d 400, 403 (5th Cir. 2010) (noting "Congress had considerably rewritten the nation's immigration laws" in 1996).  As a result of those changes, the analysis required of Gunter would have been, and remains, far from simple, as the undersigned can attest from attempting to locate and parse the applicable law.

refusing to plead guilty to a misdemeanor and going to trial on two felony charges would not have materially improved McNeill's chances of avoiding deportation. McNeill had no real defense to the charges. When his residence was searched pursuant to a warrant, he was found in possession of a whole host of controlled substances (cocaine, hydrocodone, ecstasy, Xanax, Valium, anabolic steroids, and GHB). He failed to identify any legal or factual defense he had to the charges. As Gunter succinctly put it at the hearing, McNeill "had no choice" but to plead guilty. Going to trial was virtually certain to result in a conviction. Thus, McNeill's claim that he would not have pled guilty had he known the immigration consequences of his plea is simply not believable, given that going to trial meant it was a virtual certainty that McNeill would be found guilty of two felony controlled substance offenses, and sentenced to 18-24 months of imprisonment in the federal penitentiary—only then to be deported. McNeill's claim that he would have chosen this option over a term of probation and deportation is not credible. Thus, McNeill cannot prove the prejudice prong of the *Strickland* analysis, even if could have met the first prong of that analysis.

The Supreme Court has recently instructed "courts must be cautious so that the extraordinary remedy of *coram nobis* issues only in extreme cases." *United States v. Denedo*, 556 U.S. 904, ___, 129 S. Ct. 2213, 2223 (2009). One factor to be examined before granting relief is "the relative strength of [petitioner's] ineffective-assistance claim." *Id.*, 129 S. Ct. at 2224. As our sister court found in addressing a *coram nobis* petition asserting a very similar claim:

> First, this is not a case where the defendant was wholly unaware of the possibility of deportation. [Petitioner's] attorney told him there was a possibility that he would be deported. This was accurate, if insufficient, advice under *Padilla*. Furthermore, this is not a case where there was an affirmative misrepresentation regarding deportation consequences. In evaluating the relative strength of [petitioner's] ineffective assistance of counsel claim, the fact that he has never asserted his innocence makes his claim of ineffective assistance of counsel less severe.

11

*Santos-Sanchez*, 2011 WL 379369, at *13.  As in *Santos-Sanchez*, the undersigned concludes "[t]he facts of [this] case do not support a finding that [McNeill] suffered a complete miscarriage of justice. Therefore, even assuming that [McNeill] had been able to demonstrate that he received ineffective assistance of counsel, he is not entitled to coram nobis relief."  *Id.* at *14.

## IV.  RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **DENY** Petitioner's Petition for a Writ of Coram Nobis (Clerk's Dkt #1).

## V.  OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of February, 2012.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

13